# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

EUGENE FRENCH,                    )
                                  )
     Petitioner,             )
                                  )
v.                                )          Case No. CV410-141
                                  )
ALAN CARTER,                      )
                                  )
     Respondent.             )

## ORDER

Convicted in state court for aggravated child molestation, *French v. State*, 288 Ga. App. 775 (2007), Eugene French petitions this Court for 28 U.S.C. § 2254 habeas relief, contending that his lawyer provided him with ineffective assistance of counsel (IAC). Doc. 1. As it did once before, doc. 8, the State moves to dismiss the petition as untimely. Doc. 45. The petition is untimely but equitable tolling applies. And further briefing is required.

Distilled from his multiple submissions, docs. 1, 5, 15, 16, 39, 53 & 55, French's core argument is this: *All* of the evidence against him came from the testimony of two women -- one his daughter (B.F.), the other her girlhood friend (A.S.) -- about his molestation of them when they were 10

or 11 (they cannot remember for sure) years old.   Both testified about it some eight or nine years after the fact, neither had contemporaneously complained when it happened,[1] and no one could even say with reasonable precision *when* he committed the crimes.   Doc. 9-5 at 97-100 (February 14, 2005 indictment: "between January 1, 1997 and December 31, 1999."); *see also* doc. 9-7 at 16 (June 28-29, 2006 trial transcript).

French, both victims claimed, anally penetrated them on different nights in his home, but while other people slept in nearby rooms.   Yet, neither child cried out, and B.F. testified that she was not awakened by her panties being removed but awoke only after penetration.   Nor did she claim to have been drugged beforehand.

French, a career military veteran with no criminal record, testified that his vindictive "ex" (his daughter's mother) had been gunning for him because of child support and other issues, and had put B.F. up to it.   (He

---

[1]   The state indicted French on four counts of child molestation and one count of aggravated child molestation committed against his daughter, B.F.   It also advanced one count of aggravated child molestation committed against her friend, A.S.   Doc. 9-5 at 98-100.   The jury found him guilty of only the aggravated child molestation counts.   Doc. 9-11 at 51.   French received a 20-year sentence on Count 1 and the same on Count 2, to run concurrently.   *Id.* at 83.

Incidentally, all documents referenced here have been "E-filed."   The Court is thus using the electronic screen page inserted onto the top of each page by the Court's CM/ECF software. It may not always align with the original, printed-page pagination.

is unclear about A.S.)   He also claimed that B.F. had once falsely accused him of a felony (kidnapping her), but the trial judge excluded that evidence.   The *French* appellate court declined to reach the merits of the false-kidnapping charge because defense counsel failed to perfect the record, *French*, 288 Ga. App. at 777, though it "nevertheless note[d] that [t]he state of a witness's feelings toward the parties and his relationship to them may always be proved for the consideration of the jury. OCGA § 24-9-68." *Id.*   French contends that the outcome here would have been different but for that IAC-level error.   He only obliquely complains about certain record photos of his penis that were also excluded at trial and not raised on appeal -- *French* does not mention them.

French raised these issues before the state habeas court.   It simply ignored his penis photos issue. On the IAC claim, it recited counsel's generalized testimony that he did a competent job, then ruled that counsel did a competent job -- without explaining why.   French also raised many other issues, as he does here.   As this Court was recently reminded in *Walker v. United States*, 2011 WL 3684594 at * 2 (11th Cir. Aug. 23, 2011), it is bound by *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992) (en banc), to reach *all* habeas issues raised before it, even at the expense of brevity.

3

## I.  TIMELINESS

The Court's first Report and Recommendation (R&R) applied 28 U.S.C. § 2244(d)(1)(A)'s one year limitations period to grant the state's first motion to dismiss.  Doc. 17, *reported at* 2011 WL 675129.  That one-year clock ticks from the moment a state court conviction becomes final.  It is stopped while the defendant litigates his *state* collateral appeal (state habeas) remedies, i.e., during the period a "properly filed" petition for state relief is pending.  *Wall v. Kholi*, ___ U.S. ___, 131 S. Ct. 1278, 1283 (2011) (quoting § 2244(d)(2)).  But states impose deadlines for filing such things, so when a prisoner misses one of those deadlines the federal clock keeps ticking and is stopped only when he makes his next filing. *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001).  When the state collateral appeal process ends, the defendant has whatever remains of that 365-day period to file his § 2254 petition.  Gaps anywhere along the way, then, can be fatal.  *See, e.g., Hackett v. Parker*, 2012 WL 380354 at * 4 (N.D. Okla. Feb. 6, 2012).

Here the state focused on just such a gap.  It insisted that French's state court conviction became final after the *French* opinion issued. *French* was issued on December 7, 2007, and state appellate rules gave

French another 10 days to further appeal, but French did not do so.   The

state concluded that he thus had until December 17, 2008 to file his state

habeas petition.   Since he did not file it until December 22, 2008, he used

up his 365 days before he even got to this Court.   Doc. 8.   This Court

agreed, but noted

> that in the state habeas court French filed, possibly simultaneously
> with his state habeas petition, an [*in forma pauperis* (IFP)] motion
> that was marked by that court's clerk "RECEIVED DEC 01 2008."
> Yet, on the same page, the IFP motion is marked "FILED IN
> OFFICE DEC 22, 2008." This Court has based its ruling above on
> the latter date, which is the date the State says his petition was filed.
> But if in fact French submitted his state habeas petition for filing at
> the same time he filed his IFP motion, then if his state habeas
> petition is deemed filed on December 1, 2008, his § 2254 petition
> here would be timely.

2011 WL 675129 at * 2.   Still,

> French seem[ed] to accept the State's contention that his state
> habeas petition was not filed until December 22, 2008, for he [did]
> not challenge that date or make any reference to the "DEC 01 2008"
> date stamp on his IFP motion. So, [the undersigned concluded,] the
> date discrepancy issue is waived. *See Davis-O'Brien v. Astrue*, 2011
> WL 521182 at * 2 (11th Cir. Feb. 16, 2011) (claims not raised in
> district court are waived on appeal).

*Id.*

At first the district judge agreed and thus accepted the R&R, doc.

docs. 27-29, *reported at* 2011 WL 841337, but then vacated that ruling

upon French's Fed. R. Civ. P. 72(b) Objection, docs. 26 & 30, then rejected

the R&R and denied the dismissal motion.   Doc. 31. The district judge "found that the state habeas court clerk's office received both of French's filings [his state habeas petition and accompanying IFP motion] on December 1, 2008 -- within the one year limit."   Doc. 36 at 1, *reported at* 2011 WL 1790778.   The state moved for reconsideration.   Doc. 33.   As described by the district judge, French's warden asserted that

> *his* office, and *not* the clerk's office, stamped "Received Dec 01 2008" onto French's IFP application to note when it received the document from French to mail to the [State Habeas] Court.[2] Respondent [thus] argues that French's case must be dismissed because his state habeas petition did not reach the [state habeas court] clerk's office until after the one year period expired.
>
> In other words, Respondent argues that French's case must be dismissed because *Respondent* sat on French's habeas petition for the final seventeen (17) days of French's one year period before forwarding it to the court. This conflict of interest is one reason the federal government's prisoner mailbox rule makes the date on which a prisoner delivers his filing to prison authorities for mailing the operative filing date. *See Houston v. Lack*, 487 U.S. 266, 270, 108 S. Ct. 2379, 101 L.Ed.2d 245 (1988).

---

[2]   The warden insisted

that the December 1, 2008 stamp, is the stamp of his office indicating that Petitioner's IFP request was received on that date by the institutional employee who certified Petitioner's inmate account information. (Resp. Ex. 2, p. 8). This is also evidenced by the fact that the account information was certified by the institutional official the next day, December 2, 2008; it is impossible that the superior court clerk would have received the IFP request form on December 1, prior to its certification on December 2, by the institutional official.

Doc. 33 at 2.

Doc. 36 at 1 (footnote added; emphasis original and added).

Nevertheless, the district judge was prepared to rule in the state's favor. Georgia, he explained, does not follow the federal mailbox rule, so French's state habeas petition was filed on "'the date upon which the paper [was] handed to the [state habeas court] clerk to be filed.' *Lavan v. Philips*, 184 Ga. App. 573, 574, 362 S.E.2d 138 (1987)." Doc. 36 at 1; *see also Hall v. Oubre*, 2010 WL 5652769 at * 3 (S.D. Ga. Dec. 30, 2010) ("the 'mailbox rule' does not apply to the initial filing of state habeas petitions in Georgia."). Yet, the judge denied the reconsideration motion -- only because the warden had failed to "attach an affidavit or personally sign his motion. [The warden's] motion would require the Court to give dispositive weight to a factual representation made by [his] attorneys one month after the Court ruled on this matter. The Court will not overturn its ruling on such a showing." Doc. 36 at 2.

That was a cue for the state to in fact *supply* the missing affidavit. Alas, it did not. Meanwhile, to move the case along, the district judge directed it to respond to French's petition on the merits. *Id., reported at* 2011 WL 1558124 at * 2. It did. Doc. 37-1. But in its response it continued to insist "that Petitioner filed a state habeas corpus petition on

December 22, 2008, after the one-year federal limitations already had expired.   (Resp. Ex. 2.)"   *Id*. at 1; *see also id*. at 2 ("Respondent respectfully maintains that the petition was untimely filed.").

Since the state obviously intended to pursue the untimeliness issue on appeal, the undersigned directed it to file *all* evidence (affidavits, etc.) supporting its assertion that French untimely filed his 2254 petition. Doc. 41, *reported at* 2011 WL 2491595. The state then tendered the missing affidavit.   Doc. 42-1.  But it did not then renew its untimeliness-based, motion to dismiss.   So, the Court *again* nudged it along.   Doc. 44 (Order directing it to renew its motion).   The state then renewed its dismissal motion, doc. 45, which French opposes.   Doc. 50. He has also filed, and the Court denies, an incomprehensible motion to strike.   Doc. 51.

The state now reiterates its earlier argument. Doc. 45.   It again insists that French failed to stop the clock when he failed to further litigate *French*, as required by Georgia rules, within 10 days of the December 7, 2007 *French* ruling.   Doc. 45-1 at 8.   It again insists he had until December 17, 2008, to file his state habeas petition, so his December 22, 2008 filing is too late.   To that end, the warden's "Business Manager"

certifies inmate account balances (and such certifications are required by courts considering IFP applications).   Doc. 42-1 at 1.   She swears that the December 1, 2008 stamp on French's state court IFP motion is his *prison*'s filing stamp, and not the state habeas court's stamp.   And it is her practice to process such IFP forms and turn them around to the submitting inmate within 24 hours.   Doc. 42-1 at 2-3.

The warden's office, asserts the state, thus processed French's IFP paperwork within 24 hours and therefore did not materially contribute to his delay in filing his state habeas opinion.   So, he must bear his own failure to stop 2244(d)(1)(A)'s one-year clock.   And since the December 22, 2008 state court filing stamp controls, the state concludes, French was five days late, thus time-barring his § 2254 petition.   Doc. 45-1 at 11-12.

French challenges none of this. Those facts are now established. Nor does he dispute the state's reiteration of federal and state statutory time limits applicable here.   That is, the judgment against him became final upon "the conclusion of direct review or the expiration of the time for seeking such review," § 2244(d)(1)(A).   French thus had ten days after the Georgia Court of Appeals affirmed his conviction to, under Georgia Supreme Court Rule 38, file a notice of intent to apply for certiorari to the

Georgia Supreme Court.   He did not.

But when exactly was his conviction affirmed? For the state, the *French* opinion's December 7, 2007 publication date is determinative, and it has made its time computations based on that.   French says the date of the Georgia Court of Appeal mandate remittitur[3] controls.   That was issued December 28, 2007,[4] and entered in the trial court on December 31, 2007.   Doc. 50 at 1-2.   So, he concludes, the one-year clock did not start to tick until December 28, 2007, if not the 31st.   *Id.* at 1-2.[5]

The state has not responded.   Nevertheless, French's "judgment became final when his time for seeking review with the [Georgia Supreme

---

[3]   A remittitur is simply a document (here, doc. 9-7 at 1) through which an appellate court relinquishes jurisdiction to a lower court.   *See, e.g., Youngblood v. State*, 253 Ga. App. 327, 328 (2002) ("A trial court lacks jurisdiction to take any action in a case prior to receiving the remittitur from the appellate court.") (quotes and cite omitted).

[4]   That court's online docket confirms that December 28, 2007 date: http://www.gaappeals.us/docket/results_one_record.php?docr_case_num=A07A0949 (site last visited February 15, 2012).   The record before this Court shows a trial court order making the judgment of the court of appeals the judgment of the trial court -- file-stamped December 31, 2007.   Doc. 9-7 at 4.   Note that the trial court's order is signature-dated November 26, 2007.   *Id.* The original *French* opinion was issued on November 6, 2007, but French filed a reconsideration motion, doc. 9-12 at 25, and it was denied on December 6, 2007.   *Id.* at 38.   The lower court thus jumped the gun, but its clerk did not, as reflected by the December 31, 2007 file-stamp date.   *See also* doc. 9-7 at 1 (Georgia Court of Appeals December 28, 2007 "Remittitur" Certificate).

[5]   Meanwhile, he has submitted proof (a U.S. Post Office "Certified Mail Receipt") that he mailed his state habeas petition on December 9, 2008.   Doc. 52 at 6.   The state has not rebutted or otherwise challenged this.   And although Georgia does not follow the mailbox rule, this fact would figure into an equitable tolling determination.

Court] expired." *Gonzalez v. Thaler*, ___ U.S. ___, 132 S.Ct. 641, 656 (2012). Here French never took his case beyond his reconsideration motion before the Georgia Court of Appeals. That court denied reconsideration on December 7, 2007, *French*, 288 Ga. App. at 778, so French thus had, per Georgia Supreme Court rule 38, ten days (until December 17, 2007) to pursue a writ of *certiorari* from that court. Thus at the end of that ten day period (December 17, 2007), the one-year clock began to run against him. *Gonzalez*, 132 S.Ct. at 656.

Based on the "December 22, 2008" file-stamp on the state habeas petition, it is not timely. But French has submitted proof (a U.S. Post Office "Certified Mail Receipt") and has personally affirmed that he mailed his state habeas petition on December 9, 2008. Doc. 52 at 2, 6. Moreover, a "Wilcox Co. Courthouse" official signed for it on December 10, 2008. *Id.* at 6. That places French well before the December 17, 2008 deadline on which the state now stands. And the state, he reminds, has not rebutted or otherwise challenged this. Doc. 56 at 3; doc. 57 at 1.

The district judge did rule that Georgia does not follow the mailbox rule. But French is proceeding *pro se*, so his pleadings are construed liberally, *Sanders v. United States,* 113 F.3d 184, 187 (11th Cir. 1997), and

11

in substance he argues equitable tolling.[6]  Doc. 52 at 4 ("It is understood

that a *pro se* petitioner in a habeas proceeding should be afforded some

lenity as he is not a professional in the field of law").   His unrebutted

proof shows that the state habeas court clerk received his petition on

December 10, 2008, but evidently did not get around to opening his

envelope and stamp-filing it until December 22, 2008.   *Id.* at 2.

"There are no bright lines in determining whether equitable tolling

is warranted in a given case.   Rather, the particular circumstances of

each petitioner must be taken into account."   *Pabon v. Mahanoy*, 654

F.3d 385, 399 (3rd Cir. 2011) (applying *Holland*).   Given French's

unrebutted showing that (a) he mailed off his petition with 8 days to

spare; (b) it was reasonable to expect it to be delivered within 3-5 days; (c)

in fact it arrived *the next day*; and (d) a court clerk's putative indolence

obstructed his timely filing (by receiving it on December 10 but not

stamp-filing it until December 22), that constitutes adequate diligence on

French's part, plus a sufficiently extraordinary circumstance (not to

mention a § 2244(d)(1)(B), state-created impediment) to support equitable

---

[6]  *See Holland v. Florida*, ___ U.S. ___, 130 S. Ct. 2549, 2562-63 (2010) (§ 2255 petition
is entitled to equitable tolling of one-year statute of limitations on petitions for federal
habeas relief only if he shows: (1) that he has been pursuing his rights diligently, and
(2) that some extraordinary circumstance stood in his way and prevented timely filing
of petition).

tolling.   *Cf. Knight v. Schofield*, 292 F.3d 709, 711 (11th Cir. 2002) (tolling where clerk of state supreme court failed to notify petitioner of decision denying relief, as clerk had promised, petitioner then demonstrated diligence in pursuing information when it did not do so). "The diligence required for equitable tolling purposes," after all, "is reasonable diligence . . . not maximum feasible diligence." *Holland*, 130 S. Ct. at 2565 (quotes and cites omitted).   Hence, even under the stricter reading of the limitations law, the state's Second Motion to Dismiss nevertheless must be denied.   Doc. 45.   That, in turn, requires this Court to **VACATE** its earlier ruling that denied his petition amendment motion (doc. 5) as moot because his petition was thought untimely.   *See* doc. 18 at 4; *see also* docs. 15, 16, 39 & 55 (unopposed amendments).

## II.   MERITS

To reiterate, the district judge directed the state to respond to French's § 2254 petition on the merits, and it has. Docs. 37 & 43.   Summarized, the evidence against French shows:

> that when B.F., French's biological daughter, was 15 years old and living in Michigan with her mother, she entered a poetry contest and submitted a poem entitled, "A Child's Pain." A teacher who read the poem became concerned based on the poem's content, that B.F. may have been the victim of child molestation. As a result of the teacher's concern, B.F. was interviewed by Michigan social services personnel.

During the interviews, B.F. revealed that she had lived with French when she was 11 or 12 years old and that he had in fact molested her. She recounted a specific instance when French entered her bedroom one night and sodomized her by inserting his penis inside of her anus. B.F.'s disclosures launched a police investigation which further led police to A.S., B.F.'s childhood friend.

When A.S. was interviewed, she was living in Florida and had not seen or spoken to B.F. in many years. As soon as police broached the subject with A.S., she began to cry. In a written statement, A.S. disclosed that French had molested her when she attended a slumber party for B.F.'s birthday at French's residence. A.S. recalled that while the others were either sleeping or playing games, she found herself alone with French in his bedroom, with the lights off. As she lay on the bed with French, he sodomized her by inserting his penis inside of her anus. Based upon this evidence, the jury convicted French of two counts of aggravated child molestation.

*French*, 288 Ga. App. at 775.

At both trial and on appeal French was represented by retained counsel, Lorenzo C. Merritt.   Doc. 9-5 at 10.   On direct appeal, Merritt contended "that the trial court erred in denying his motion for issuance of out-of-state subpoenas *duces tecum* [seeking background information]; in denying his motions for continuance; and in excluding evidence of an alleged false report by B.F. that French had kidnapped her and evidence that B.F.'s sister had been molested by her stepfather." *French*, 288 Ga. App. at 775.   According to the appellate court, French failed to satisfy the legal requirements for the subpoenas, failed to show that the trial court

abused its discretion in denying his continuance motions, and failed to

perfect the record on the "false kidnapping charge" claim.   Nor did he

show abuse of discretion on the "stepfather molestation" issue.   *Id.* at

775-778.

Proceeding *pro se*, French next presented his collateral appeal

claims to the state habeas court.   Doc. 9-2.   His habeas petition there

raised three claims on his preprinted habeas petition form:

> GROUND ONE: Ineffective assistance of counsel.   Counsel failed to
> prepare witnesses for trial, notify court of former prosecution of
> case, use conflicting evidence to impeach witness, and induce
> reasonable doubt or reversible error, failed to request mistrial due to
> judicial bias and court error.   Counsel failed to assert any and all
> reasonable grounds for appeal.   Failed to obtain expert witnesses
> for trial.
>
> GROUND TWO: Double Jeopardy.   Case was previously tried and
> dismissed in the state of Michigan.
>
> GROUND THREE:   Due process.   Insufficiency of evidence.

Doc. 9-12 at 4.   The next page of that petition bears a section preprinted

with this: "Part III: OTHER CLAIMS NOT PRESENTED TO A COURT

BEFORE THIS." Doc. 9-2 at 5.   There French wrote: "None of the

grounds were presented due to ineffective counsel."   *Id.* He then

expanded on his claims in a supporting, pre-hearing amendment, *id.* at

15-34, which he read at the state habeas evidentiary hearing, alleging that

Merritt

> [f]ailed to assert any and all reasonable grounds for appeal, counsel's lack of investigation and preparedness was inadequate for trial, counsel failed to prepare witnesses for trial, counsel failed to inform court of former prosecution, failed to use evidence of previous denial and false allegations, seek witness impeachment, failed to use conflicting evidence to induce reasonable doubt, reversible error or seek witness impeachment, failed to request judge to recuse himself for judicial bias.

Doc. 9-5 at 5.

French presented evidence and elaborated on his claims at the evidentiary hearing. *Id.* at 20-43. The state habeas judge subsequently denied him relief. Doc. 9-3. He recited governing standards, then determined that French raised just three grounds.[7] *Id.* at 2-4. The

---

[7] At the conclusion of the state habeas hearing French asked the judge to hold the record open for 30 days "[t]o submit supporting documentation." Doc. 8-5 at 43. The judge replied: "I'll leave the record open for 30 days. Whatever you want to submit, you need to send a copy to the Attorney General's Office." *Id.* (emphasis added). The state reads this statement as limiting French to supporting documentation, not granting him leave to submit new claims. Doc. 37-1 at 5 n. 3 ("While after the state habeas court hearing Petitioner filed a brief in which he attempted to raise additional claims, some of which are similar to the ones raised in this federal petition, at that point it was too late to raise them."). That is a fair reading.

In its "Final Order Denying Habeas Relief," however, the state court notes that "[t]he petitioner raises three grounds in his Application for Writ of Habeas Corpus *and* subsequent Motion*s* to Amend Petition." Doc. 9-3 at 2 (emphasis added). Yet, there is only one, *pre-hearing* Motion to Amend in the record, doc. 9-2 at 13-14, suggesting the possibility that the state habeas court did treat as properly before it *any* post-hearing claims raised by petitioner. The Court would otherwise direct the state to clarify this issue but, in light of the result reached below (i.e., concluding that all but two claims be denied outright and ordering additional briefing on those two), it is not

judge denied ground three -- French's evidentiary insufficiency claim -- because Georgia law does not recognize it in habeas.  *Id.* at 3.   And since Merritt failed to raise ground two (encompassing two trial court errors) on direct appeal, it was procedurally barred.  *Id.* at 3-4.

The habeas judge acknowledged that IAC can supply cause for overcoming procedural default. [8]  Doc. 9-3 at 4-5.  Hence, "ground one" -- that Merritt was ineffective -- was pivotal for French since IAC essentially enables the back-door review of claims that competent counsel *should* have raised.   In denying that claim, the habeas judge recapitulated Merritt's *generalized* testimony about his own performance:

[Merritt testified that he and petitioner had been in constant

---

necessary to further explore this matter.

[8]   Georgia and federal law are the same here.  Failure to timely raise a defense or claim can procedurally default it both in the state and federal courts.  But procedural default can be excused if one of the two exceptions to the procedural default rule applies: (1) upon a showing of cause and prejudice, or (2) for a miscarriage of justice, or actual innocence. *McKay v. United States*, 675 F.3d 1190, 1196 (11th Cir. 2011) (28 U.S.C. § 2255 context); *Greene v. Upton*, 644 F.3d 1145, 1154 (11th Cir. 2011) (§ 2254 context); *Barrow v. Barker*, 287 Ga. 145, 145-46 (2010) (remanding for lower court to determine if IAC supplied cause to overcome claim deemed procedurally defaulted since it was not raised on direct appeal); 12 GA. PROC. CRIMINAL PROC. § 35:19 (Aug. 2011).

Hence, IAC can supply cause to excuse procedural default if that IAC claim itself is not procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000); *Taylor v. Sec'y Dep't of Corrs.*, 2011 WL 2160341 at * 63 (M.D. Fla. Jun. 1, 2011); *Barrow*, 287 Ga. at 145-46; *Hall v. Lewis*, 286 Ga. 767, 769-770 (2010).  Actual innocence can overcome that default but the petitioner must show he is actually innocent of the crime.  *McKay*, 657 F.3d at 1196; *Perkins v. Hall*, 288 Ga. 810, 823 (2011).

> contact, and that there was a complete exchange between the two of them. . . . . [H]e did "all the customary things" that he felt he should do in a case of such a nature. . . .   In regards to the appeal, Mr. Merritt testified that he and the petitioner had discussions about it, and were "pretty much in accord."   He testified that he reviewed the record, and then tried to pursue the strongest and most meritorious grounds on which he would have an opportunity to get a reversal. . . . He testified that he ultimately felt that he had raised the most meritorious and viable issues on appeal.

*Id.* at 7.   Then -- without explaining *why* Merritt performed effectively,

much less citing to the trial transcript -- the judge ruled

> that the petitioner has failed to establish that counsel was in any way deficient or unreasonable in his representation of the petitioner at trial, or in determining which errors to assert on appeal.   This Court further finds that the petitioner has failed to show that there existed a reasonable likelihood that but for counsel's alleged errors the outcome of the petitioner's case would have been significantly different. Therefore, this Court finds that the petitioner did not receive ineffective assistance of counsel.

*Id.* at 7.

Rather than explain *why* Merritt was not ineffective, the ruling,

once stripped of its declaratory conclusions, simply travels on hollow

reasoning:   Merritt was not ineffective on a particular issue . . . because

he said he did a competent job generally.   That IAC ruling, in turn, drove

the judge's application of procedural default to French's two non-IAC

habeas claims: "Furthermore, this Court finds that petitioner has not

shown sufficient cause and prejudice [(i.e., he showed no IAC)] to warrant

this Court to overlook any default from failing to raise these issues on direct appeal.   Therefore, this Court finds that ground two [which raised those claims] is procedurally defaulted." *Id.* at 4.   Finally, and as will be shown below, the judge simply did *not* reach some of French's habeas claims.

> Merritt initially raised the following § 2254 claims here (verbatim):
>
> Ground one: Evidence obtained by irreparable misidentification and insufficient evidence. Complainant testified to not seeing [French] before, during, or after incident.   That [French] was not there when she went to sleep.   And that there were other males in the house.
>
> Ground two: Conviction [was] obtained by violation of protection against double jeopardy.   Petitioner was prosecuted in Michigan and the case was dismissed at bench trial, afterwards Georgia prosecuted and convicted petitioner for the same allegations.
>
> Ground three: Conviction obtained by collaterally estopped issues. Petitioner was prosecuted in Michigan and case was dismissed at bench trial. Afterwards Georgia prosecuted and convicted petitioner for same allegations.
>
> Ground four: Conviction obtained by violation of the requirement for the trial court to have personal jurisdiction to prosecute. Petitioner was prosecuted in Michigan and the case was dismissed at bench trial but the state of Georgia never appealed the dismissal[, thus] leaving Michigan with jurisdiction.

Doc. 1 at 6.

In his motion to amend, doc. 5 -- unopposed per Local Rule 7.5 but previously denied as moot given the Court's untimeliness ruling (doc. 18)

-- French for the most part has amplified on his original IAC claims. Inexplicably numbering his later briefed claims starting at Ground Ten, he lists a smorgasbord of trial errors by counsel in an effort to overcome procedural default and thus back-door those claims through an IAC finding. He also adds (numerically skipping over grounds eleven through twelve) [9] "Ground thirteen: Conviction obtained by violation of jurisdiction requirement supporting facts: Case in Michigan for same crime was dismissed at bench trial and Michigan court still has jurisdiction over petitioner." *Id.*

In a later brief (he has basically self-amended his petition but the state has not objected), doc. 53, *as amended*, doc. 55, he challenges his conviction on venue grounds, essentially elaborating on Grounds Two, Three and Four above -- his molestation conduct in Michigan had nothing to do with Georgia, and thus the prosecutor in his case failed to establish venue. *Id.* at 1-2. He also argues that Merritt was ineffective for failing to challenge venue. *Id.* at 3-4.

Finally, French raises additional grounds in supplemental filings,

---

[9]   At various places within his filings French labels claims as "Grounds" and "Enumerations of Error." This has caused confusion, and the state's briefs fail to clearly identify the specific claims to which it has responded. The Court will refer to all of French's claims as "Grounds" and use the number that French has assigned to them (e.g,, "Enumeration of Error 11" is Ground 11).

docs. 15, 16, 39, to which the state has also responded.   Docs. 37, 37-1 &

43.   Since the state has not opposed the act of raising additional claims

(but instead opposes them on the merits), the Court has not applied Fed.

R. Civ. P. 15(c)(1)(B). [10]   *See Davenport v. United States*, 217 F.3d 1341,

1344 (11th Cir. 2000) ("'Relation back' causes an otherwise untimely

claim to be considered timely by treating it as if it had been filed when the

timely claims were filed."); *Johnson v. United States*, 2011 WL 3320565 at

* 3 n. 6 (S.D. Ga. Aug. 1, 2011).

## A.   Governing Standards

In both his direct and collateral appeals the Georgia courts issued

written opinions.   Rulings on fully adjudicated issues must "be given the

benefit of the doubt," *Felkner v. Jackson*, ___ U.S. ___, 131 S. Ct. 1305,

---

[10]   Under Rule 15(c)(1)(B), courts can deny new, untimely claims claimed to "relate
back" (and thus escape § 2244(d)'s time-bar) because, for example, they would be
futile.   *See, e.g., Bogardus v. United States*, 2012 WL 292870 at * 7-8 (S.D. Ga. Jan. 4,
2012).   In practice, however, many courts effectively merits-review them anyway. *See,
e.g., Andrillion v. Stolc*, 2012 WL 174953 at * 10 (E.D. Cal. Jan. 20, 2012) (denying new
claims as untimely but also noting that "petitioner has made no showing suggesting
that the California Supreme Court's rejection of his proposed new claims for federal
habeas relief was contrary to or an unreasonable application of federal law").
Otherwise, allowing new claims is a matter of discretion.   *Bishop v. Burnett*, 312 F.
App'x 252, 253 (11th Cir. 2009).   Again, the state here does not oppose French's
gradual addition of claims during the "timeliness-litigation" phase of this case.
Hence, in an abundance of caution, the Court will reach all of them, subject to the
state's procedural default defense.   As will be seen, all but two claims (which require
further briefing) are meritless in any event.

1307 (2011) (quotes and cite omitted), which means this Court cannot

disturb them unless they

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court*[11] of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis and footnote added).

This is a highly deferential, "difficult to meet" standard that

petitioners must overcome. *Harrington v. Richter*, 562 U.S. ___, 131 S.

Ct. 770, 786 (2011); *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388,

1398 (2011). "[A] state prisoner must show that the state court's ruling

on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended

---

[11] "Clearly established" means a Supreme Court holding, not dicta, and a holding that exists at the time of the state court decision that applies the legal principle at issue. *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1399 (2011); *Thaler v. Haynes*, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); *Hunt v. Comm'r, Ala. Dept. of Corrs.*, 666 F.3d 708, 720 (11th Cir. 2012); *Bowles v. Sec'y for Dep't of Corrs.*, 608 F.3d 1313, 1315 (11th Cir. 2010). Lower court opinions, even if directly on point, will not suffice. *Bowles*, 608 F.3d at 1316.

in existing law beyond any possibility for fairminded disagreement."
*Harrington,* 131 S. Ct. at 786-87, quoted in *Hill v. Humphrey,* 662 F.3d
1335, 1345 (11th Cir. 2011) (en banc).

And "2254(d) applies even to summary state court opinions, as well
as to opinions that do not cite Supreme Court precedent." *Means v.
Sec'y, Dep't of Corrs.,* 433 F. App'x 852, 853 (11th Cir. 2011) (citing
*Harrington,* 131 S. Ct. at 784). So if a state court's decision is
unaccompanied by any legal analysis or explanation, the petitioner must
still show that there was no reasonable basis for the state court to deny
relief. *Johnson v. Sec'y, Dep't of Corrs.,* 643 F.3d 907, 930 n. 9 (11th Cir.
2011).[12] This Court also must presume state court factual determinations

---

[12] Essentially, petitioners must reverse engineer adverse state court rulings, i.e.,
come up with all the ways such rulings *could* be legally supported, then knock each one
down.

> Under § 2254(d), a [federal] habeas court must determine what arguments or
> theories supported or, as here, *could have supported,* the state court's decision;
> and then it must ask whether it is possible fairminded jurists could disagree
> that those arguments or theories are inconsistent with the holding in a prior
> decision of this Court.

*Harrington,* 131 S. Ct. at 786 (emphasis added); *Amos v. Thornton,* 646 F.3d 199, 205
(5th Cir. 2011) ("Where a state court's decision is unaccompanied by an explanation,
the habeas petitioner's burden still must be met by showing there was no reasonable
basis for the state court to deny relief. To assess whether a petitioner has made this
showing, we determine what arguments or theories *could have* supported the state
court's decision and then ask whether fairminded jurists could conclude that those
arguments and theories are consistent with the Supreme Court's relevant teachings.")
(quotes, footnotes, and alterations omitted).

to be correct; petitioners must rebut that presumption by clear and convincing evidence.   28 U.S.C. § 2254(e).

Ineffective assistance of counsel (IAC) claims, even when reviewed *de novo*, are subject to a standard that packs its own internal layer of deference.   *Strickland v. Washington*, 466 U.S. 668 (1984).   "[A] defendant must show both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U.S. ___, ___, 129 S. Ct. 1411, 1419 (2009).   Thus, he must show that his lawyer's representation fell below an objective standard of reasonableness.   *Strickland*, 466 U.S. at 688. Courts apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id*. at 689. *Strickland* error must be so serious "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.   On the prejudice prong the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.*

"'Surmounting *Strickland*'s high bar is never an easy task,'" *Harrington*, 131 S. Ct. at 788 (quotes and cite omitted), and no hindsight or second-guessing is permitted. *Id.*   But where a state court has already ruled on IAC claims, the petitioner's burden of

> [e]stablishing that [its] application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.*, at 689 [104 S. Ct. 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is '*doubly*' so, *Knowles*, 556 U.S., at ----, 129 S. Ct., at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ---- [129 S. Ct., at 1420]. *Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

*Id.* at 788 (emphasis added).   Because this "[d]ouble deference is doubly difficult for a petitioner to overcome . . . it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Johnson*, 643 F.3d at 911; *Hamner v. Deputy Sec'y of the Fla. Dep't of Corrs.*, 438 F. App'x 875, 880 (11th Cir. 2011) ("Our standard of review is 'doubly deferential' when 'a *Strickland* claim [is] evaluated under the § 2254(d)(1) standard.'") (*quoting Knowles*, 129 S. Ct. at 1420).

Before the state court French had to meet the *Strickland* standard by establishing both that (a) his counsel's performance was deficient in that "it fell below an objective standard of reasonableness," and (b) but for the attorney's errors, there is a reasonable probability that the result of the proceeding would have been different. *Harrington*, 131 S. Ct at 787. He thus was required to plead and prove that (a) counsel erred; (b) no reasonable lawyer would have done what her lawyer did; and (c) his act or omission was outcome-altering. *Borden v. Allen*, 646 F.3d 785, 822-23 (11th Cir. 2011) (IAC claim denied because petitioner failed to plead it with adequate specificity).

Before this Court, he must show that the state court's application of the *Strickland* standard was "*unreasonable*," which "is different from an *incorrect* application of federal law." *Harrington*, 131 S. Ct. at 785 (emphasis in original). Indeed, "even a strong case for relief does not mean the state court's contrary conclusion is unreasonable." *Id*. at 786. A state court's decision is unreasonable only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington*, 131 S. Ct. at 786. In other words, if "there is any reasonable argument that counsel satisfied

*Strickland's* deferential standard," federal habeas relief must be denied.

*Id.* at 788; *Hunt*, 666 F.3d at 729; *Johnson*, 643 F.3d at 910-11.

## B.   Analysis

As noted earlier, a core theme animates French's petition -- that his accusers' memories were eroded by time and his daughter's was corrupted by a malicious "ex."[13]   B.F. was 11 or 12 when French molested her, and 19 when she testified about it.   Doc. 9-7 at 60.   Her co-victim friend, A.S., was 10 and 18, respectively.   Both, he contends, completely fabricated their testimony, and all these things put together spell insufficient

---

[13]   French never married his daughter's mother, Indi Ellington, so she is not his ex-wife, but certainly an "ex."   Doc. 9-7 at 39.   She unmistakably affected his defense strategy.   Merritt so testified at French's state habeas court evidentiary hearing:

> Essentially the theory of defense was the problem was we had these two independent accusers.   So the theory of defense was that there had been, or must have been some collusion between those two to make the accusation against him.   But also that the foundational accusation from his daughter came from the fact that Mr. French had an ongoing running battle with her mother.   As I sit here, I don't recall whether he was married to her or not.   I just can't remember that, but there had been just ongoing conflict between the defendant and the accusers, one of the accuser's mother.   And that conflict ran from Michigan to North Carolina, Georgia and probably elsewhere.

> And we were able to discern a fabrication on the part of the daughter that came from the mother prior to the allegation of molestation, so the theory of defense was that it was a malicious accusation prompted by the mother, and colluded with the friend.

Doc. 9-5 at 13-14; *see also* doc. 9-10 at 20-25 (defendant's sister's testimony about how B.F.s' mother prodded her to falsely accuse French of molesting B.F., and how that influence manifested itself in B.F.'s poem).

evidence to support his conviction. Hence, he reasons, counsel was ineffective in litigating this and the state courts ruled unreasonably on this issue.   Doc. 9-2 at 17-18; doc. 5 at 1; doc. 15 at 9-12; doc. 55 at 3-4.

But in his effort to show evidentiary insufficiency to support his IAC claim (i.e., that Merritt failed to adduce key impeachment and "venue" evidence which would have produced reasonable doubt and thus rendered the evidence insufficient), French only selectively cites portions of the trial while ignoring others.   Recapitulating the evidence beyond the *French* court's above-excerpted summarization will show how French fails to show § 2254(d) unreasonableness on all but two of his other claims, which require further briefing.

B.F., who was 19 when she testified at the trial in this case, doc. 9-7 at 57, was the only daughter of French and Indi Ellington.   Doc. 9-7 at 68, 87; doc. 9-9 at 108.   She lived with French in Hinesville, Georgia, for "about 2 years" starting when she was "[a]bout 10 or 11" years old.   Doc. 9-7 at 60, 97; *see also id.* at 120 ("from about [1997] until [1999]").   A.S. was one of her female friends.   Doc. 9-7 at 61.   French, B.F.'s stepmother and three stepbrothers then lived with her, while French was then a U.S. Army soldier.   *Id.* at 62-63.   B.F.'s stepbrothers came home from school

about 30-45 minutes after her, *id.* at 65, and it was in that time frame that

French started showing her pornographic films, including one named

"Mr. Buttman." *Id.*   While she watched them on a couch with French, he

showed her his erect penis.   *Id.* at 66-67.

> Q. Okay.  And he offered you some explanation about what you were -- what he was showing you?
>
> A. Yeah.  He showed me what the head was and what the balls were, and he just showed me -- just told me what they were for. And, of course, I knew they made babies, but ...
>
> Q.  Well, did he tell you they made babies?
>
> A.  Yes.
>
> Q.  And all the while, was this movie still going?
>
> A.  Yes.

Doc. 9-7 at 67-68.   French then got down on the floor and had her get on

top of him, with her clothes on, with his penis still erect, "and he kind of

just moved me a certain way and asked me what it felt like and just how it

felt, and I said it kind of hurt a little bit, but -- I don't know. It was just

like that." *Id.* at 68.   This occurred when B.F. was "[a]bout 11."   *Id.* at

69.

On another occasion, B.F. was in her bedroom, on her bed naked

from her waist down -- as French requested.   *Id.* at 70-71. He then

brought her a vibrator, turned it on, inserted it into her vagina, and asked her how it felt. *Id.* at 71-72. "He would move it and say, What does it feel like now? Doesn't feel like anything. And he asked me if I was nervous. And I was like, Yeah, a little bit." *Id.* Afterwards, he explained that it was her stepmother's but she could use it whenever she wanted, just be sure and clean it afterwards. *Id.* at 73. French never apologized or expressed regret to her for these actions; "He would just say it was just teaching." *Id.*

Also while living with French, B.F. developed a rash "[o]n my elbows, on my knees, [and] on my stomach." *Id.* at 74. Having sensitive skin, she'd had this problem prior to living with him. *Id.* He took her to a dermatologist. *Id.* She received an ointment to treat it. *Id.* at 75. French later told her that she was supposed to see that doctor again but the doctor could not see her, so French would have to videotape her naked body to send to the doctor. *Id.* at 76 ("I want to say I was completely naked because he had to record my stomach."). He had her "get up on all fours," videotaped her, then showed it to her afterwards, zooming in and out on her body parts, including her behind. *Id.* at 77-79. She was 10 or 11 at this time. *Id.* at 79. It "seemed regular" to her. *Id.*

30

French also "educated" her about keeping her vaginal area clean, odor free, and moist. *Id.* at 79-80. She recalled awakening once to discover him putting a solution into her vagina. *Id.* at 80. And, from time to time, French slept in her bed with her, though "[i]t wasn't very often," and "[s]ometimes he had clothes on." *Id.* at 81. French also gave her and her stepbrothers alcohol mixed in punch, and she recalls then getting drunk with him and two of her stepbrothers. Doc. 9-7 at 84-85, 104-05. She never asked him for alcohol. *Id.* at 85. French's sexual contact with her, however, happened only when they were sober. *Id.* at 107.

All of this evidence came from B.F. The state indicted French for three counts of child molestation based on these events.[14] The jury *acquitted* him on all three counts. Doc. 9-11 at 51. One explanation for this is that it did not believe B.F. Another is that it simply reached a compromise verdict when it convicted him of the aggravated child molestation counts discussed *infra*. This much is certain: All impeachment evidence obviously was critical to French's defense.

---

[14]   One child molestation count (Count 3) was based on the videotaping incident; another (Count 4) was based on the vibrator episode; another (Count 5) was based on having B.F. sit on French's lap and watch porn movies with him, and the last child molestation count (Count 6) was based on the petroleum jelly episode. Doc. 9-5 at 99-100.

The aggravated child molestation count regarding B.F. is supported by the following evidence:   One night French got into B.F.'s bed while she slept, removed her panties and penetrated her with something.   Doc. 9-7 at 81. "And I woke up, and I just -- I can't explain the feeling.   It was just something -- I don't know what woke me up.   I woke up and felt something inside me."   *Id.*   The prosecution inquired further:

Q.   Okay.   When you say inside you, inside where?

A.   In my behind.

*Id.* at 82.   The prosecution, however, never asked for any more details. But *Merritt* did:

Q. [B.F.], you testified just a little bit ago that you were asleep and you woke up to find *your daddy's penis in your anus* --

A.   Right.

Q.   -- is that correct?

A.   Yes.

Q.   And you were not awake when this happened?

A.   No.   And not until I woke up.

Q.   And you woke up to find his penis in your anus --

A.   Yes.

Q.   Is that correct?

A.   Yes.

Doc. 9-7 at 111-12 (emphasis added).[15]

B.F. then got up and ran into the bathroom, stopping along the way to pick up her panties from the floor.  *Id.* at 83–84.  She never discussed it with him thereafter, she "[j]ust pretended like it didn't happen[.]"  *Id.*

She moved away from French's home "in the beginning of the 6th grade."  *Id.* at 86.  She went to live with her mother (Indi Ellington) in

---

[15]   This was part of Merritt's defense strategy.  Merritt asked B.F. and later A.S. if, when anally penetrated by French, they were injured.  Both said no.  Doc. 9-7 at 114; doc. 9-9 at 62-63 (A.S. was not injured and suffered no bleeding); *id.* at 64 (nor did she cry out when penetrated).  And neither complained to or otherwise shared the incident with anyone after the fact.  Doc. 9-7 at 114; doc. 9-9 at 64.

Hence, it made sense to Merritt to try and adduce photographs of French's penis and emphasize its size, doc. 9-10 at 61-63 (photos), to impeach the victims on the ground that a 10-year girl would have endured pain, bleeding, and presumably cry out in a house full of people -- if not also complain to someone afterwards.  Doc. 9-10 at 5-6 ("Judge, we would like to get into the record the matter of [French's] private dimensions which bear directly on the matter of him having anally assaulted two girls, neither of which sustained any injury, neither of which sent up any alarm, and all of which were in the house with someone else when this went on with no commotion. [¶] We could like to get those dimensions in the record.  We would like to place the photograph of the organ -- actually, we'd like to place it before the jury.  But if not that, we'd certainly like to place it in the record."); *see also* doc. 9-2 at 20 (French, raising this issue in his state habeas filings, argued: "It is incredible that they (at the age of 10) did not experience 'any' effects from being anally raped by an adult male [and] kept silent under the circumstances . . . .").

Upon the prosecution's objection, however, the trial judge excluded the photos.  Doc. 9-10 at 6.  In his state habeas petition French faulted Merritt for failing to raise this issue on appeal, as it impeached the girls' testimony in this, a 100% "dated-memory-testimony" case.  Doc. 9-2 at 21. He only obliquely re-raises it here.  *See* doc. 5 at 1 (faulting Merritt for failing to raise on appeal trial court's "error for denying defense [opportunity] to present relevant evidence").

Michigan, where she completed high school.   *Id.* at 87.   In the 10th grade she entered a poetry contest where she submitted a poem she titled "A Child's Pain."   *Id.* at 87-89; doc. 9-8 at 89.   It related that her father molested her, violated her love and trust, and damaged her, then concluded: "And I love you the same."   *Id.* at 90.

A teacher approached her and asked if that happened.   B.F. initially denied, but then confirmed its truth once confronted by county social services investigators.   *Id.* at 91.   Michigan authorities brought no prosecution but instead handed their findings off to the Hinesville, Georgia police department, since these crimes were committed in French's Hinesville home.   Doc. 9-9 at 7, 116-17.

In addition to the anal-penetration questions, Merritt's cross examination of B.F. focused on the simple child molestation counts for which the jury acquitted French.   This included the relatively short (30-45 minute) afternoon time window for French to have exploited, with the threat of her brothers, a stepsister and stepmother coming and going in the same house.   Doc. 9-7 at 98-101.   He also elicited from her the fact that just before Christmas 2002, she revealed to her mother that French had been giving her alcohol.   Ellington asked her "has he ever did

anything to you, touched you?" and B.F. then denied it.  *Id.* at 109-110.[16]

B.F. admitted, on further cross-examination, that there were no independent facts (injuries, witnesses, photos) -- or any other form of evidence other than her testimony -- that any molestation or other complained of activity occurred.  Doc. 9-8 at 28-29.  And before the case erupted following her 2003 poem, she had only mentioned the porn-watching with one of her brothers (and in passing, at that) and related the actual molestation details to an aunt during the Christmas 2002 season.  *Id.* at 29.  Merritt thus illuminated the relative dearth of communication, let alone complaints, from B.F. about her father.

A.S., who was 18 when she testified at French's trial, doc. 9-9 at 32, was one of B.F.'s friends who some eight years before attended B.F.'s slumber birthday party.  *Id.* at 37.  French was there, as were some of B.F.'s other friends and one of B.F.'s brothers.  *Id.*  A.S., then in the fifth grade, *id.* at 50, and thus "probably about 9 or 10" years old, *id.* at 45, somehow (she did not remember) wound up in French's bed that night.  *Id.* at 38.  It was dark outside, and the lights were out in his bedroom.

---

16   Merritt would later put up French's sister to testify that she spoke with B.F. around Christmas of 2002, when B.F. revealed Ellington's attempts to induce her to make false abuse allegations against French.  Doc. 9-10 at 15-26. Ellington also referred to the poem months before it was submitted at school.  *Id.*

*Id.* at 38.   She was in her pajamas and wearing underwear.   French evidently slipped them off, applied Vaseline to "my behind," then, while she was lying on her stomach, slipped his penis "into my behind." *Id.* at 39-44; *see also id.* at 64 (on Merritt's cross-examination: "Q. And you indicate that you were anally raped in the room; is that correct?   A. Yes."); *id.* at 73.   She does not remember for how long.   *Id.* at 61.

After French finished with her, she possibly then went to sleep, *id.* at 60, 65, but later left the room -- with her underwear and pajama bottoms back on -- and played video games with one of B.F.'s brothers. *Id.* at 45.   The next morning her mother picked her up and she said nothing.   *Id.* at 45.   She did not tell her mother what French had done. *Id.* at 69.   She never spoke to any of her friends about it, either.   *Id.* at 73.   But, because she feared French, she never returned to the French household.   *Id.* at 79.

Some eight years later she was questioned by Hinesville, Georgia police Detective Melvin Kesner.   *Id.* at 12.   Kesner had first met with Ellington, then B.F., who told him about A.S.   *Id.* at 7-8.   He also spoke with A.S.'s mother over the phone.   *Id.* at 26.   From A.S.'s parents he obtained photos of A.S. and showed them to B.F., who confirmed that A.S.

was at B.F.'s birthday party that night.   *Id.* at 26-27.   When Kesner met

with A.S. he informed her

> that I was there for a reason, and that reason was that when she
> was 10 years old, she had gone to a birthday party at a girl by the
> name of [B.S's] house.   [¶].   And I told her -- I said, You spent
> the night over there, and during that night something happened.
> I says, Could you tell what happened that night?
>
> Q. Did she say anything to you, What are you talking about?
>
> A. She said nothing. She sat there and immediately started
> crying.

*Id.* at 13.

A.S. then refused to talk about the incident but wrote out a

statement about it for Kesner.   *Id.* at 29-30.   She ultimately testified

at French's trial, corroborating that statement.   *Id.* at 75.   She

conceded, on cross examination, that other than her word there is no

other evidence (no contemporaneous medical examination, no

witnesses, etc.) to corroborate her testimony.   *Id.* at 77.

Merritt put up one of French's sons (B.F.'s stepbrother) as a

defense witness.   Eugene French, II, testified that he remembered the

birthday party and that nothing improper went on.   All the girls, he

recalled, slept in either the living room or B.F.'s bedroom.   The

defendant never acted improperly toward B.F. or any other of his

children, he never gave them alcohol, and he never saw B.F. drunk. *Id.* at 87-92. And when the molestation allegations that led to this prosecution first surfaced in 2003, he was surprised. *Id.* at 92. B.F., he testified, never exhibited "abuse" related behavior around him, including at a Christmas 2002 family gathering. *Id.* at 94. And he never heard of any porn films in the family home. *Id.* at 145.

Merritt also called French's mother, Vera French, to impeach A.S.'s testimony. From a conversation with B.F., Vera learned that A.S. had claimed something happened with French but B.F. did not believe her. Also, A.S. "was telling people that she liked" French before the birthday party. Doc. 9-10 at 44-45.

French himself testified, denying all charges and asserted misbehaviors. *Id.* at 120-46. He stated that Ellington had constantly fought with him for custody, etc., over the years, until December 2002. *Id.* at 111-13. He also noted a 2004 "Michigan proceeding." *Id.* at 113. "The purpose of [that action was] -- the same actions was filed in Michigan claiming child molestation. Michigan found no evidence, and they dropped the case." *Id.* at 114. Upon the prosecutor's objection, the trial judge removed the jury and inquired:

THE COURT: Were you prosecuted in Michigan for --

THE WITNESS: No, sir.

THE COURT: -- child molestation?

THE WITNESS: No, sir.

THE COURT: Was there a civil action against you for child molestation?

THE WITNESS: The actions that the experts [who testified in this case] spoke about in Michigan, and they followed their criteria -- or they followed their process.

THE COURT: What kind of action was it?

THE WITNESS: I don't know, sir.

DETECTIVE KESNER: Probably talking about the investigation starting up there, sir, and being moved down here because the jurisdiction was in Hinesville[, Georgia].

THE COURT: Okay.   Is that what you're talking about?

MR. MERRITT: That's what I'm sure he's talking about.

*Id.* at 116-17.   The trial judge then had French confirm for the jury that in fact he had never before been prosecuted for child molestation and that the instant case simply originated in Michigan.   *Id.* at 118.

### 1.   **Double Jeopardy, Venue Claims**

A cluster of French's claims revolve around the concept of Double

Jeopardy [17] -- because Michigan "tried" him for the aggravated molestation and dismissed the charges against him, Georgia could not re-prosecute him for the same charges.   Doc. 1 at 6 ("Petitioner was prosecuted in Michigan and the case was dismissed after a bench trial. Afterwards, Georgia prosecuted and convicted petitioner for the same allegations."); *see also* doc. 5, ground two (same claim, reiterated); doc. 15 at 12-13 (same claim, reiterated); *id.* at 13-14 (same claim, reiterated); doc. 9-2 (this was presented to the state habeas court); doc. 9-3 (habeas judge failed to reach it).   As revealed by French's own trial testimony, this assertion is just plain false.

Unsurprisingly, French, on whom the burden rests to both plead, argue, and prove all claims with specificity and supply evidence, *Borden*, 646 F.3d at 822-23 (IAC claim denied because petitioner failed to plead it with adequate specificity); *Chavez v. Sec'y Fl. Dep't of Corrs.*, 647 F.3d 1057, 1061 (11th Cir. 2011), cites *no* evidence of any prior prosecution. He also ignores the fact that he *admitted*, during trial, that there was no such prosecution.   *See also* doc. 9-5 at 17, 37 (Merritt reminded him of this at

---

[17]   Under the Fifth Amendment's Double Jeopardy clause, no person shall "be subject to the same offence to be twice put in jeopardy of life or limb." *Beverly v. Jones*, 854 F.2d 412, 414 (11th Cir.1988) (quoting U.S. Const. amend. V, cl. 2).

the state habeas hearing and French did not challenge him on it).   It therefore is not surprising that Merritt did not raise such issue on appeal, and thus it is properly deemed procedurally defaulted and not overcome by IAC-grounded cause and prejudice.   Doc. 37 at 2-3.   This claim is simply frivolous, as is French's related IAC claim against Merritt for failing to raise it.   Doc. 15 at 15-16.

French also argues that Georgia lacked venue over him because he "believes the area [on which the] alleged crimes [occurred was a part of military property[, and] therefore in military jurisdiction and not the state."   Doc. 55 at 2.[18]   He also claims that the state failed to establish venue by never establishing that the crime occurred within the county in which he was prosecuted.   *Id.* at 2.

Setting aside for the moment procedural default and untimeliness (for these claims are new), French's "military venue" claim fails outright. He "believes" the crime occurred on military property, but then says and shows nothing more.   As noted earlier, it is his burden to plead and prove his right to § 2254 relief, and he has not made even the barest attempt here.   And venue, for that matter, is not a federal constitutional claim.

---

[18]   The Court grants his "Motion to Strike" his earlier brief, doc. 54, thus substituting doc. 53 with his replacement brief, doc. 55.

*Hance v. Zant*, 696 F.2d 940, 957 (11th Cir. 1983) (although under Georgia law venue is part of state's case and must be proved beyond reasonable doubt, Georgia treats venue as jurisdictional fact, not as element of offense of murder; hence, the federal constitution does not require that venue be proved beyond a reasonable doubt), *overruled on other grounds by Brooks v. Kemp*, 762 F.2d 1383 (11th Cir. 1985).  Indeed, if a trial court charges the jury generally on the law of reasonable doubt and there is sufficient evidence of venue, then it need not even specifically charge that proof of venue is material allegation of the indictment.  *Id.* at 957.

Relatedly, French faults Merritt for failing to challenge venue.  The state, he says, proved only that the acts took place in Hinesville, Georgia, but not that Hinesville is in Liberty County, Georgia.  That was reversible error, he contends, and he was prejudiced because his conviction would have been reversed had Merritt litigated this issue. Doc. 55 at 3-4.  French cites *Melton v. State*, 282 Ga. App. 685, 688 (2006) (state failed to prove venue for two acts of aggravated sodomy and aggravated sexual battery; it presented no evidence that defendant's residence where sexual acts occurred or that city of defendant's residence was located in county, and proving that the crime took place within a city

without also proving that city was entirely within county did *not* establish venue); *see also Alexander v. State*, 311 Ga. App. 95, 95 (2011) (state failed to prove venue, because no evidence showed that the city of Millegeville, where the incident in question occurred, is entirely within Baldwin county); doc. 9-7 at 62, 63, 70 (prosecutor asked B.F. about living in Hinesville when French molested her but not in what county that was located).

But French failed to raise this claim before the state habeas court. *See* doc. 9-2 at 1-34 (his state habeas petition and amendment); *see also id.* at 33 (he raised lack of "personal jurisdiction" in state habeas court, but the case law he cites there clarifies that he was not raising venue, much less an IAC claim based on it); doc. 9-5 (state habeas evidentiary transcript). The "state habeas court [thus] would hold [this claim] to be procedurally defaulted and not decide [it] on the merits, because [it was] not presented in his initial state habeas petition. It follows that [this claim is] procedurally barred from review in this federal habeas proceeding. . . ." *Chambers v. Thompson*, 150 F.3d 1324, 1327 (11th Cir. 1998); *Conner v. Hall*, 645 F.3d 1277, 1288 n. 10 (11th Cir. 2011) ("When applied to ordinary habeas petitioners who simply failed to include available claims

in their initial petitions, the Georgia successor statute, O.C.G.A. § 9–14–51, is a valid procedural bar."); doc. 7 at 3-4 (state raised § 9–14–51 defense against French's "personal jurisdiction" and any other "new" claims).[19]   This claim therefore also must be denied.

### 2.   Evidence-Based Claims

French faults Merritt for failing to move for a directed verdict of acquittal.[20]   Doc. 53 at 3; *see also* doc. 15 at 9-11 (same claim, reiterated); doc. 9-2 at 17-18 (as presented in state habeas petition).   Under the IAC standards set forth *supra*, this claim fails outright in that the

---

[19]   Before the state habeas court French did argue that Merritt was ineffective because he "failed to raise all reasonable grounds for appeal."   Doc. 9-5 at 4.   But that's not enough, for habeas petitioners must "fairly present" their federal claims to the state court, "such that the reasonable reader would understand each claim's particular legal basis and particular factual foundation." *Kelley v. Sec'y, Dep't of Corrs.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004) (citing *Picard v. Connor*, 404 U.S. 270, 277 (1971)).

[20]   French's underlying claim, of course, challenges the sufficiency of the evidence against him (i.e., because the evidence was insufficient, Merritt was deficient for failing to move for a directed verdict).   Merritt raised no sufficiency claim on direct appeal, but the *French* court reached the issue anyway. *French*, 288 Ga. App. 775, 775 n. 1.   That claim is exhausted. *Alverson v. Workman*, 595 F.3d 1142, 1153 n. 3 (10th Cir. 2010) (citing decisions from other circuits, including *Cooper v. Wainwright*, 807 F.2d 881, 887 (11th Cir. 1986) ("a state court's decision to raise and answer a constitutional question *sua sponte* will also permit subsequent federal habeas review"), and concluding that "a state appellate court's sua sponte consideration of an issue not only satisfies § 2254's exhaustion requirement, but, more importantly for our purposes, also constitutes an adjudication on the merits that is ripe for federal habeas review"); *see also Gero v. Pallito*, 2010 WL 2756974 at * 7 (D. Vt. Jun. 16, 2010) (IAC claim exhausted even if state court sua sponte considers just one of the *Strickland* prongs).   It also fails for the same reasoning applied above -- the state court's ruling was not § 2254(d)-unreasonable.

above-described B.F. and A.S. testimony alone supplies enough evidence to support guilt beyond a reasonable doubt. It cannot be said that the state court rulings were § 2254-unreasonable.

French complains that his "[c]onviction [was] obtained by irreparable misidentification and insufficient evidence. Complainant [B.F.] testified to not seeing petitioner before, during or after incident, that petitioner was not there when she went to sleep, and that there were other males in the house." Doc. 1 at 6, *as briefed*, doc. 15 at 5-8; doc. 39 at 1-7. As the above factual recitation shows, French evidently is trying to exploit the darkness that surrounded B.F. the night that he got into her bed and molested her.

French shows nothing unreasonable about the state court rulings here, either. Ample evidence enabled the jury to find that B.F. knew her own father's feel and smell, the sound of his voice, breath, etc., and thus her identification of him as the perpetrator of the crime against her was well within the scope of what would support a rational jury's reasonable-doubt level finding. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Means*, 433 F. App'x at 854-55 (evidence was sufficient to support defendant's conviction under Florida law for sexual battery upon a child

less than 12 years of age; although there were inconsistencies in the victim's statements in describing the details of the incident, these were attributable to her age, and her overall account was not inconsistent).[21]

French next complains that there was a "fatal variance" between what he was charged with and what was proved at trial. Doc. 15 at 8. He faults Merritt for failing to challenge this, too. *Id.* at 10. The state correctly contends that this is a new claim and thus procedurally defaulted. Doc. 37-1 at 3. French has shown no cause to overcome that, so it is denied on those grounds alone. Even if he did, this claim would still fail. He was indicted for "child molestation and "aggravated child molestation" under O.C.G.A. § 16-6-4.[22] Doc. 9-7 at 95-100. The

---

[21]   For that matter, Merritt testified at French's state habeas hearing that "I don't recall that [B.F.'s identification of French] ever being an issue whether you were seen by your daughter. She described what she described." Doc. 9-5 at 21. French has never rebutted this other than impliedly (and thus frivolously) insisting that, since the lights were out, somehow B.F. could not identify him. French, by the way, is not raising the "too dark to see me" defense against his "A.S." conviction.

[22]   Under Georgia law:

(a) A person commits the offense of child molestation when such person:

(1) Does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person; or

(2) By means of an electronic device, transmits images of a person engaging in, inducing, or otherwise participating in any immoral or indecent act to a child under the age of 16 years with the intent to arouse

indictment's operative wording includes committing "an act of sodomy upon [B.F.], a child under the age of sixteen (16) years, by placing his penis at her anus. . . ." Doc. 9-5 at 98. It did the same for A.S. *Id.* French reasons that, because neither victim used the word "penis" but instead said "something," this constitutes a fatal variance, thus violating his due process. Doc. 15 at 8-9. As noted earlier, however, Merritt -- as part of his defense strategy continued *here* -- asked both victims if French penetrated her with his penis *and both said yes*. Hence, this claim also fails on the merits. Note too, that French does not even mention A.S. on this claim, yet his conviction also rests on what he did to her.

In Ground 7 French raises a due process violation because prosecution witness Amy Allen, employed by the Michigan child advocacy center that investigated the case upon receipt of B.F.'s poem and other information, doc. 9-8 at 41-42, "bolstered" B.F.'s testimony by opining, says French, that B.F. was "not coached." Doc. 15 at 17 (citing "T-206 L-22-23," which can be found in doc. 9-8 at page 83). The state contends

---

or satisfy the sexual desires of either the child or the person.

O.C.G.A. § 16-6-4. "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy." O.C.G.A. § 16-6-4(c).

that this is a "new claim" and thus procedurally defaulted.  Doc. 37 at 4-5.  That is correct, except that French presented this issue within an IAC claim against Merritt, doc. 9-2 at 16, 23-24; doc. 9-5 at 30) and, as noted earlier, that can supply cause and prejudice to overcome the default. And the state habeas court, as explained earlier, at best reached it in the generic sense.  Doc. 9-3; *see also* doc. 15 at 16-17 (claim represented here).  Still, under the "reverse-engineering" rule, *see supra* n. 12, French must show that its ruling was § 2254(d)-unreasonable.

Allen testified that she found no influence when asked if she ruled out the possibility of "third-party influence."  "Sometimes," Allen explained,

> children will tell you that it [an incident, for example] happened at Eastertime because when -- they hear that that's when they visited Grandpa -- it was Eastertime – from their parents.  That doesn't necessarily mean that they were coached by their parents, but they hear, during the course of their allegation, that it was Eastertime because that's when they went to Florida.  [¶] So a third-party influence can come into a child's statement.  It sometimes is accurate information from that child, and sometimes it is a third-party influence. In this case, there wasn't an occasion that the distinction needed to be made.

> Q.  You found no influence?

> A.  Not that -- none that I found.

Doc. 9-8 at 83.

French cites only that passage as evidence of "bolstering."[23] It could not be said to have rendered his trial fundamentally unfair within the meaning of *Felker v. Turpin*, 83 F.3d 1303, 1311–12 (11th Cir. 1996); *see also Cooper v. Wise*, 426 F. App'x 689, 692 (11th Cir. 2011). Hence, French's IAC claim faulting Merritt for failing to object to it is properly denied for failure to show prejudice. *See Damerow,* 310 Ga. App. at 537 (applying *Strickland* standards to conclude that trial counsel's failure to object to forensic interviewer's testimony that victim's demeanor during interview was consistent with her molestation allegations was not ineffective assistance of counsel, as testimony only addressed

---

[23]   Merritt could have raised the claim on direct appeal; "a witness's credibility may not be bolstered by the opinion of another witness as to whether the witness is telling the truth." *Strickland v. State*, 311 Ga. App. 400, 403 (2011) (quotes and cite omitted); *see also Damerow v. State* 310 Ga. App. 530, 535-36 (2011) (testimony of victim's mother, investigating officer, forensic interviewer, and family counselor, which repeated 15-year-old victim's allegations and testimony describing defendant's alleged molestation acts, was inadmissible bolstering evidence; child hearsay statute, applicable to children under the age of 14, did not apply, and victim's pretrial statements to which witnesses testified did not predate her alleged motive, which was vindictiveness toward defendant and a desire to have him removed from the home).

However, "[i]t is not improper bolstering . . . for a witness to express an opinion as to whether objective evidence in the case is consistent with the victim's story." *Damerow*, 310 Ga. App. at 537 (quotes and cite omitted); *Westbrooks v. State*, 309 Ga. App. 398, 401-02 (2011). Allen's testimony -- *generically* describing an "influence" factor found in children's testimony -- similarly cannot be deemed to constitute bolstering, and French does not otherwise show how it rendered his trial fundamentally unfair. Nor can it be said that no reasonable attorney would have failed to raise this issue.

interviewer's objective observations of victim's behavior, not whether she found victim's statements believable or credible, and defendant did not suffer prejudice as result to admission of testimony).

In Grounds 16 & 17, French argues that the state violated his Sixth Amendment Confrontation Clause rights by admitting Detective Melvin Kesner's testimony about what A.S. said to him (Ground 17).   He then faults Merritt (Ground 16) for "failing to investigate" the investigative process employed by Kesner, *see* doc. 9-9 at 6-16.   Doc. 16 at 3-10.   He specifically cites Merritt's failure to "ensure [that] the [victim] statements the detective obtained [from A.S.] had particularized guarantees of trustworthiness."   Doc. 16 at 3.   Kesner, French insists, was biased and failed to videotape his interview, so a competent defense lawyer would have shown how the investigative results (namely, what Kesner learned from A.S.) "lacked 'indicia of reliability.'"   *Id.* at 4.   "Had this been presented to the court and ruled upon," French contends, "the issue [presumably A.S.'s testimony against him, French does not say] would have been deemed inadmissible and the outcome of the trial would have been different."   *Id.*

As the state points out, doc. 37 at 8-9; doc. 37-1 at 3, this claim is

procedurally defaulted.   Even if not, it fails on the merits.   A.S. herself *personally testified* against French at his trial, doc. 9-9 at 32, while Kesner -- who also testified and thus was subject to cross-examination -- simply provided the details as to how A.S. wound up being brought to trial some 8 years after the fact, and why she had kept quiet about his molestation in the meantime.   *Id.* at 6-16.

Nor, for that matter, does French explain *how* Kesner stepped over the constitutional line here.   He cites *Idaho v. Wright*, 497 U.S. 805 (1990), for "reliability requirements," the need for videotaping, and "indicia of reliability," but he never does plead and prove -- as is his burden -- how his Confrontation Clause rights were violated to a *Brecht-prejudicial*[24] degree (i.e., harmful error).[25]   Conclusory claims

---

[24] "Federal courts considering habeas corpus petitions challenging state court judgments must assess the prejudicial impact of constitutional error in state trials under the substantial and injurious effect standard (*Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)) regardless of whether or not state courts employed the harmless beyond a reasonable doubt standard in assessing prejudice (*Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705, 24 A.L.R.3d 1065 (1967)). (*Fry v. Pliler*, 551 U.S. 112, 127 S. Ct. 2321, 168 L. Ed. 2d 16, 20–24 (2007).) An exception exists for "structural/automatically reversible" errors such as erroneous reasonable doubt instructions. (*Sullivan v. Louisiana*, 508 U.S. 275, 281, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993).)" AVOIDING REVERSIBLE ERROR IN CRIMINAL CASES § 3:16, *Deference* (2011). Thus, while state appellate courts conducting harmlessness review of trial court errors must find constitutional error harmless beyond reasonable doubt before affirming a conviction, federal courts reviewing the same issue under § 2254 apply a less stringent standard -- "substantial and injurious effect." *Wood v. Ercole* , 644 F.3d 83, 93 (2nd Cir. 2011).

that something was done wrong fetch no § 2254 relief, not even an evidentiary hearing.[26]

In Ground 9, French argues prosecutorial misconduct based on the prosecutor calling him a "pervert" and "child molester that he is" during his opening argument, where he also argued that French "molested his daughter." Doc. 15 at 19. This violated French's due process rights, he contends. *Id.* at 19-20. Such comments are evaluated to determine

---

[25]   In *Wright*, the defendant was convicted of lewd conduct with a minor -- her two daughters. The state trial court determined that her 2.5 year old child victim was incapable of testifying at trial, so the court admitted, under the state's residual hearsay exception, the statements the child uttered to an examining pediatrician. *Wright*, 497 U.S. at 811. Wright, then, never got to confront and cross-examine her victim. She was convicted on both counts, but appealed only from the conviction involving the 2.5 year old. *Id.* at 812. The Supreme Court reversed after determining that the State had not met its burden of proving that the child's statements bore sufficient indicia of reliability to withstand scrutiny under the Confrontation Clause, and the error was not harmless beyond a reasonable doubt. *Id.* at 827.

Here, *both* victims testified, and French directly confronted them. The jury learned only part of A.S.'s story, and only in a duplicating sense, through Kesner (as he testified to the details surrounding the investigation, and thus how A.S. came to testify in this case). So only in the most general sense do *Wright*'s principles apply, and French has not shown that they were violated.

[26]   *See Caderno v. United States*, 256 F .3d 1213, 1217 (11th Cir. 2001) (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)); *see also United States v. Laetividal-Gonzalez*, 939 F.2d 1455, 1465 (11th Cir. 1991) (no evidentiary hearing required where movant's allegations fail to satisfy the prejudice prong of the *Strickland* ineffective assistance of counsel test); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required on claims "which are based on unsupported generalizations"); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973) (no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations); *Johnson v. United States*, 2011 WL 3320565 at * 3 (S.D. Ga. Aug. 1, 2011).

whether they so unfairly affected the trial as to deny due process, but they must be considered in the context of the entire trial and in light of any curative instructions.   *Parker v. Allen*, 565 F.3d 1258, 1273-74 (11th Cir. 2009).

But French fails to show this Court where he raised it before the state appellate and habeas courts, and so the state correctly argues default here.   Doc. 37-1 at 5-6.   Plus this claim fails even on the merits because, after the jury heard French's *own daughter* testify how he penetrated her anally, one could hardly imagine any undue prejudice from labeling him a "pervert."   French's parallel IAC claim (Ground 10, doc. 15 at 20-21) -- that Merritt was ineffective for failing to object to these statements -- is thus correspondingly without merit.

In Ground 11, French faults Merritt for failing to prepare witnesses for trial, and for failing to be diligent in the time that the trial court afforded to him.   *Id.* at 21-23; doc. 9-2 at 29 (issue presented to the state habeas court).   He then adverts to various "exhibits" showing that, if only Merritt had done his job, B.F. would have been shown to be a false accuser.   Doc. 15 at 21-23.   But it is insufficient to cite to, for example, "Exhibit 4" and *not* have it attached to one's brief -- much less tell the

Court *where* in the record it may be found.   Under federal pleading standards,[27] it remains *French's* burden to plead and prove his claims,

---

[27]   The Eleventh Circuit recently illuminated the heightened pleading standards applied to § 2254 petitions:

> The § 2254 Rules and the [28 U.S.C.] § 2255 Rules mandate "fact pleading" as opposed to "notice pleading," as authorized under Federal Rule of Civil Procedure 8(a). Coupled with the form petition or motion, the federal rules give the petitioner or movant ample notice of this difference. If, for example, Rule 2(c)(1) and (2) of the § 2254 Rules should cause a petitioner (or his counsel) to doubt what the words "specify all grounds" and "state the facts supporting each ground" mean, the CAUTION contained in paragraph (9) of the "Instructions" should remove such doubt. As the Supreme Court has observed, "[h]abeas corpus petitions must meet *heightened* pleading requirements, *see* 28 U.S.C. § 2254 Rule 2(c)." *McFarland v. Scott*, 512 U.S. 849, 856, 114 S. Ct. 2568, 2572, 129 L.Ed.2d 666 (1994).

> The reason for the heightened pleading requirement -- fact pleading -- is obvious. Unlike a plaintiff pleading a case under Rule 8(a), the habeas petitioner ordinarily possesses, or has access to, the evidence necessary to establish the facts supporting his collateral claim; he necessarily became aware of them during the course of the criminal prosecution or sometime afterwards. The evidence supporting a claim brought under the doctrine set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), for example, may not be available until the prosecution has run its course. The evidence supporting an ineffective assistance of counsel claim is available following the conviction, if not before. Whatever the claim, though, the petitioner is, or should be, aware of the evidence to support the claim before bringing his petition.

*Borden*, 646 F.3d at 810 (footnote omitted; emphasis added).   Too, French must *argue* his claims. *Fils v. City of Aventura,* 647 F.3d 1272, 1284 (11th Cir. 2011) ("district courts cannot concoct or resurrect arguments neither made nor advanced by parties."); *id.* at * 9 (a district court "may *not*, however, act as a plaintiff's lawyer and construct the party's theory of liability from facts never alleged, alluded to, or mentioned during the litigation.").   That includes citation to the trial and state habeas court records:

> [A]ll of these principles of law would mean nothing if district courts were required to mine the record, prospecting for facts that the habeas petitioner overlooked and could have, but did not, bring to the surface in his petition.

including citation to the trial and state habeas records to demonstrate exhaustion, non-waiver, etc.

The Court does note from French's *state* habeas petition his complaint that Merritt could have

> obtained information that . . . B.F. denied [the anal penetration] incident occurred, that she was badgered and influence[d] by

Making district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts. With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him. *Cf. Adler v. Duval County School Board*, 112 F.3d 1475, 1481 n. 12 (11th Cir. 1997) (noting in a civil case that, absent plain error, "it is not our place as an appellate court to second guess the litigants before us and grant them relief ... based on facts they did not relate."); *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1373 (11th Cir. 1997) ("[W]e are not obligated to cull the record ourselves in search of facts not included in the statements of fact."). The Seventh Circuit memorably said that appellate judges "are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Likewise, district court judges are not required to ferret out delectable facts buried in a massive record, like the one in this case, which was more than 25,000 pages of documents and transcripts.

*Chavez v. Sec'y Fl. Dep't of Corrs.*, 647 F.3d 1057, 1061 (11th Cir. 2011).

Finally a § 2254 petitioner's claim to the state courts "must be presented face-up and squarely; the federal question must be plainly defined." *Hunt*, 666 F.3d at 731 (quotes and cite omitted). Yet, *Hunt* reviewed *attorney*-litigated claims, while here French proceeded *pro se*, thus entitling him to the liberal pleadings standard in both court systems. *Sec'y, Fla. Dep't of Corrs. v. Baker*, 406 F. App'x 416, 422 (11th Cir. 2010) ("*Pro se* pleadings must be liberally construed. . . ."); *Thompson v. Long*, 201 Ga. App. 480, 481 (1991) (*pro se* pleadings are held to less stringent standards than pleadings that are drafted by lawyers). There is inevitable tension between those two poles. The Court need not resolve that tension because, even under a generous reading of French's claims, all but two fail on the merits in any event. In the meantime, § 2254 petitioners like French must, at a minimum: construct at least the core elements of their federal habeas claims and show that they were fairly presented to the state courts (and cite to the record demonstrating that).

[Ellington] in order to obtain money from petitioner. If she made the false allegations, that she was put out of her house for wanting to recant allegations, and that she made other false allegations.

Doc. 9-2 at 29.   It is true that this prosecution was premised entirely on dated-memory evidence, and thus any material impeachment evidence was crucial to French's defense.   But it also true that French must *now* cite to *available* evidence, *see* n. 27 *supra*, and that means affidavits or a testimonial proffer of what precisely Merritt *could have* adduced for him at trial.   The state habeas hearing transcript shows that that court left the record open for him to submit anything that he wanted.   *See* doc. 9-5 at 43.   All he cites here, however, is his mere belief that such evidence existed.   That's not enough.   And as noted above, the record shows that Merritt did get fabrication-based impeachment evidence before the jury (e.g., French's sister's testimony about Ellington's attempts to get B.F. to falsely accuse French "of messing with her.").   French thus fails on both *Strickland* prongs.   In that he has failed to show that the state habeas court's ruling was § 2254(d)-unreasonable, this claim also must be denied.

Ground 12, the substance of which Merritt presented on direct appeal, doc. 9-12 at 8-15, and which French later presented to the state habeas court, doc. 9-2 at 4, 28; doc. 9-5 at 36, raises (construed liberally) a

"Confrontation Clause" claim based on excluded witness-impeachment evidence.   Doc. 15 at 23-25.   Again, the indictment charged French with aggravated child molestation (Count 1) and child molestation (Counts 3-6) for the acts he committed against B.F., plus aggravated child molestation for the acts he committed against A.S (Count 4).   Doc. 9-5 at 98-100. Focusing only on the B.F. count (hence, 50% of his conviction), French argues that "structural error" infected his trial because the trial judge granted the prosecution's motion to exclude evidence Merritt sought to introduce about B.F.'s prior "false kidnapping" charge against French. Doc. 15 at 23-24; *see also* doc. 9-6 at 81 (prosecution's *in limine* motion).

To that end, French (in Ground 13) faults Merritt for failing to develop and proffer the evidence and thus get it into the state court record.   Doc. 15 at 25-26 (noting the *French* appellate opinion's denial of this claim because Merritt failed to perfect the record; *see also French*, 288 Ga. App. at 277 ("In the absence of this information, the assignment of error is so incomplete as to preclude its consideration by this court.")); doc. 9-5 at 26-29 (at the state habeas hearing French confronted Merritt about this issue, and Merritt conceded that the *French* court "addressed the issue, but did not find the error that we were raising" -- yet Merritt did

not acknowledge that his failure to preserve it was the reason why no error was found); doc. 9-2 at 27-28 (French's state habeas brief raising this issue); doc. 9-5 at 19 (French confronted Merritt about this at his state habeas evidentiary hearing).

As noted earlier, the state habeas court recited Merritt's testimony about the generic investigative and adversarial steps he took, then in effect concluded that Merritt was not ineffective -- because he said so. Even if Ground 12 (the Confrontation Clause claim) is analyzed under the aforementioned § 2254(d)-reasonableness standard, and even if Ground 13 (the IAC claim) is analyzed under that plus the additional, double-deference standard, nevertheless further briefing is required here.

French was a career military veteran with no prior criminal record when indicted in this case.   Doc. 9-9 at 105, 107; doc. 9-6 at 105-06.   As Merritt emphasized on direct appeal, no evidence other than the testimony of B.F. and A.S. supports the conviction. [28]   Finally, impeachment/fabrication formed the molten core of his defense strategy. Hence, any document or bit of verbal testimony showing that B.F. was in

---

[28]     In Georgia, "[t]he testimony of a single witness is generally sufficient to establish a fact."   *Rayner v. State*, 307 Ga. App. 861, 861 (2011).   "And the testimony of the victim, alone, is sufficient to support the convictions." *Id.* at 868.

any way untruthful obviously was material to his defense.   Even the *French* court paused to note, while bypassing this claim due to Merritt's omission, "that '[t]he state of a witness's feelings toward the parties and his relationship to them may always be proved for the consideration of the jury.' OCGA § 24-9-68."   *French*, 288 Ga. App. at 777 n. 2.

A reasonably similar § 2254 case, *Sec'y, Fla. Dep't of Corrs. v. Baker*, 406 F. App'x 416 (11th Cir. 2010), informs this claim:

> In 1999, a 15–year–old girl identified as "D.A." filed an abuse report against Baker, her brother-in-law. He was charged with one count of committing a sexual act on a victim under 16 years of age, by "oral, anal, or vaginal penetration by or union with the sexual organ of another," in violation of Fla. Stat. § 800.04(3) (1998). At trial, D.A. testified that she was living with her sister and Baker in 1999. She said, "I was laying on the couch and my sister went out. . . . So, [Baker] came -- out of the blue, just came out touching me, feeling on me. He grabbed my finger, my hand, and took me in their room and he had sex with me with a condom."

*Id.* at 418.   Applying state law, the trial judge in Baker's case excluded evidence of the D.A.'s past false sex abuse allegations.   *Id.* at 419.   "On direct appeal, Baker argued that Florida's evidence laws do not abrogate a defendant's constitutional rights, and, thus, must give way when such laws deny the defendant 'the right to constitutional confrontation, or to due process.'" *Id.* at 420.   Baker was not harmed, the state appellate court concluded, since Baker admitted to having sex with D.A. *Id.* A

dissent argued that his admission was equivocal at best.   *Id.*

> Before the federal habeas court Baker cited his argument
>
> on direct appeal that the exclusion of the false-accusation evidence
> violated his confrontation rights and precluded him from presenting
> a full and fair defense. He contended that the appellate court's
> rejection of his claim incorrectly and unreasonably recited the
> harmless-error test, reached a conclusion that would have been an
> incorrect application of the Supreme Court's true harmless-error
> test, and was based on an unreasonable determination of the facts.

*Id.* at 421.

The district court agreed and granted the writ.   *Id.*   Upon the

state's appeal, the Eleventh Circuit applied the liberal pleading standard

accorded to *pro se* litigants (the district court appointed Baker counsel

*after* Baker filed a *pro se* federal habeas petition) and concluded that "the

district court did not err in treating [Baker's claim] as having raised a

claim of a violation of substantive due process, specifically through a

Confrontation Clause error." *Id.* at 421.   D.A.'s truthfulness was key to

the prosecution, so her prior false accusations spoke to her general

character for truthfulness *and* particularly attacked her truthfulness and

motivation for testifying against Baker.   And -- just as in French's case

here -- the trial court only limited her testimony in light of state rules of

evidence regarding impeachment, rather than out of concerns such as

harassment, prejudice, confusion or any policy of protecting sexual assault victims. The error thus was not harmless, the state courts unreasonably applied the law, and Baker therefore was entitled to § 2254 relief.[29]   *Id.* at 424-425.

At the commencement of trial here, the state, which had invoked Georgia's Rape Shield statute (O.C.G.A. § 24-2-3(a)) via written motion prior to trial, doc. 9-6 at 85, moved to exclude even the passing mention by Merritt that B.F.:

> made a false -- prior false allegation of kidnapping, [which] would clearly be a prior specific act of the victim and is clearly inadmissible in any respect whatsoever.   Even if it's true, we have no police reports.   We have no certified copies of anything to support that contention. And just the mere mention of that in front of the jury certainly could prejudice the State's case, and I would ask the Court to rule that that not even be gone into.   It's improper.

Doc. 9-7 at 20.   In response, Merritt cited two Georgia cases.   The first was, *Spivey v. State*, 197 Ga. App. 11 (1990).   That case addressed the admissibility of prior accusations made by an alleged victim of child molestation against other persons regarding matters *unrelated* to the sexual misconduct charges against the defendant -- "the victim told her

---

[29]   This area of law bears many subtle nuances.   *See generally* ANN., *Impeachment or cross-examination of prosecuting witness in sexual offense trial by showing that similar charges were made against other persons*, 71 A.L.R.4TH 469 § 2[a] (1989).

father that she saw her mother in bed with his brother, and (2) that the victim falsely accused her mother of flushing her goldfish down the toilet." *Id.* at 12-13.   *Spivey* held that these accusations, if false, would tend to show the propensity of the victim to make false allegations *in general* against other persons, so the trial court erred in not making a threshold determination outside the presence of the jury as to the probability of falsity before excluding the evidence.   *Id.*[30]

The second was *Tyson v. State*, 232 Ga. App. 732 (1998).   Convicted of, *inter alia*, child molestation, Tyson argued on appeal that

> the trial court erred in excluding evidence that [his] victim had made prior false allegations of sexual molestation against another man. The transcript shows that the other man pled guilty to sexual battery after the victim reported that he put his hand inside her bathing suit bottom. However, the record also shows that the victim

---

[30]   That court reasoned:

In *Smith v. State*, 259 Ga. 135 (1), 377 S.E.2d 158 (1989) the Supreme Court held that it was harmful error to not admit testimony of previous false allegations made by the victim. Although *Smith* involved a victim's allegedly false accusations of sexual misconduct by other men, we find the reasoning of that case to be applicable to the accusations made by the victim in this case. While we cannot say that the victim's allegedly false accusations show a propensity of the victim to make false statements regarding *sexual* misconduct, the accusations, if false, would tend to show the propensity of the victim to make false allegations against other persons. Therefore, before ruling on the admissibility of the evidence, the trial court should have made a "'threshold determination (outside the presence of the jury) that a reasonable probability of falsity [existed].' [Cit.]" *Smith, supra* at 137, 377 S.E.2d 158.

*Spivey*, 197 Ga. App. at 13 (emphasis added).

told authorities that the man molested her in other ways, and she admitted outside the presence of the jury that she "made a bunch of stuff up" and "lied or exaggerated about some things" involving the incident with the other man.

*Id.* at 733.   The appellate court agreed with Tyson "that evidence concerning these false allegations of molestation should have been admitted."  *Id.*   Again citing *Smith*, the court noted the trial court's apparent conclusion

that because an act of sexual misconduct had occurred, and the perpetrator had pled guilty to sexual battery, there was no "reasonable probability" that the allegations were false. But this finding was clearly erroneous. The facts here do not show a reasonable probability of falsity but a certainty that false allegations were made, because the victim admitted that she fabricated part of what she said the other man did to her. Although the defendant should not have been allowed to question the victim about the one part of her accusation that she never recanted (i.e., that the other man put his hand in her bathing suit) the jury should have been allowed to hear evidence concerning the accusations that were false in order to allow the jury to assess the victim's credibility.

*Id.* at 734.

Before the trial court in this case Merritt argued that *Spivey* and *Tyson* "stand for the proposition that it is proper to introduce evidence of prior false allegations whether –

THE COURT: -- Of child molestation.

[PROSECUTOR]: That's the exception, Your Honor.

THE COURT: It's got to be child molestation.

MR. MERRITT: Well, Judge, I don't believe, in fact --

THE COURT: Okay.  Well, that's my ruling.  *I don't really have time to read these cases* because we have a jury waiting in the jury room, but I'm pretty familiar with the law.  If you have prior allegations -- false allegations of child molestation, then you can present that, but so-called false allegations of kidnapping would not be admissible unless it involves him. [¶] Well, did it involve the defendant?

[PROSECUTOR]:  Yes, it did.  It involved him as being the party who was not allowing [B.F.] to go home.  But I do know -- and the law clearly recognizes an exception to the general rule.

THE COURT: Okay.

Doc. 9-7 at 21-22 (emphasis added).

Merritt then pointed out that under *Spivey*, "prior false allegations by the victim even of others on subjects *other than sexual misconduct* are admissible."   *Id.* at 22 (emphasis added).   The prosecutor insisted "that's clearly not the law," *id.*, and Merritt replied by again citing *Spivey*. *Id.*   The trial judge ignored him:

THE COURT: Okay.   Well, what's the next motion *in limine*?

*Id.* at 22.  Upon the state's insistence, the Court thus barred Merritt from even mentioning the false kidnapping allegation in opening argument.  *Id.* at 22-24.

French, who presented this claim to the state habeas court, doc. 9-2 at 27-28; doc. 9-5 at 36, thus preserved what Georgia courts recognize as a Confrontation Clause rights claim.   *See, e.g., Gonzalez v. State*, 310 Ga. App. 348, 352-54 (2011) (during prosecution for rape, child molestation and other crimes involving defendant's stepdaughter, his Confrontation Clause rights were not violated when the trial court precluded defense counsel from asking her mother about whether she entered the United States legally, and whether she was attempting to obtain resident status through a special filing for victims of domestic violence; defendant was allowed to question the mother concerning her bias, interest and motive in having defendant convicted of the charged crimes).

The analytical wrinkle here originates in case law construing Georgia's Rape Shield statute.   It most often is interpreted to allow the introduction of evidence that a victim has made prior false accusations of *sexual misconduct* -- though a trial court must, before admitting such evidence, make a threshold determination outside the presence of the jury that a reasonable probability of falsity exists.   *Walker v. State*, 308 Ga. App. 176, 178-79 (2011); *Rayner v. State*, 307 Ga. App. 860-61 (2011); 11 GA. PROC. CRIMINAL PROCEDURE § 24:39 (Aug. 2011); KURTZ, CRIMINAL

OFFENSES AND DEFENSES IN GEORGIA § 30 (2011) ("Testimony regarding the victim's alleged past false accusations against persons other than the defendant is admissible in child molestation cases.").

But *Spivey*, a child-molestation case which sanctioned impeachment based on *non*-sex-based matters, has never been overruled, and French's trial judge simply did not take the time to consult it.   And while *Baker* did involve "rape shield symmetry" on the prior (sex-based) false accusation at issue there, that court's reasoning did not turn on that distinction, but on whether exclusion of the false-accusation evidence precluded Baker from presenting a full and fair defense.   It did.

In his "Final Order" in this case, the state habeas judge addressed French's claim that "the trial court erred by denying the petitioner the ability to show prior false allegations."   Doc. 9-3 at 3.   He denied it as procedurally defaulted -- French had failed to raise it on appeal.   *Id.*   But French *did* raise it on appeal (doc. 9-12 at 8), except that Merritt -- and this is part of French's IAC claim against him -- failed to perfect the record.   *French*, 288 Ga. App. at 777.   French thus squarely raised an IAC claim against Merritt for that omission. The state habeas judge articulated that claim as: "counsel failed to use evidence of previous

denials and false allegations to seek witness impeachment." Doc. 9-3 at 4.

Yet in ruling against French, the judge simply rehashed Merritt's *own* testimony about his *general*, trial preparation efforts, and did not discuss any testimony or evidence on this *particular* claim. The judge then conclusorily ruled that Merritt was not ineffective.  Doc. 9-3 at 6-7.  In so doing, he failed to note what the the *French* court illuminated: the fact that Merritt in fact failed to preserve French's "witness-impeachment" claim and French's assertion of that omission as IAC evidence.  *See* doc. 9-2 at 16; *id.* at 27-29 (French directly accused Merritt of being ineffective for failing to perfect the record on the "false kidnapping" claim); *see also id.* at 21-22 (re-raising it through his claim that Merritt was ineffective for failing to raise judicial bias at trial and on direct appeal); doc. 9-5 at 38 (confronting Merritt at his state habeas evidentiary hearing, French asked Merritt whether he investigated "false allegations" evidence for trial, but the state objected the that question and the court sustained it); doc. 38-2 at 7, 11, 12, 13.

Indeed, the *French* court, which spelled out Merritt's failure to perfect the record and "nevertheless note[d] that '[t]he state of a witness's feelings toward the parties and his relationship to them may always be

proved for the consideration of the jury[,]' OCGA § 24-9-68," *French*, 288 Ga. App. at 777, thus never was asked to apply *Spivey* and *Tyson* to grant French a new trial here -- *because* of Merritt's omission.   French's claim is that he was entitled to the benefit of a Georgia evidence principle (per *Spivey*) denied to him because his trial judge wouldn't take the time to read it.   And his state habeas judge, in turn, did not analyze his IAC claim on that score (for simply pointing to an attorney's self-serving declarations about generic efforts in a case, then ruling he was not ineffective as to a particular claim is tantamount to no analysis).   That ruling is arguably no less unreasonable than that found in *Baker*, 406 F. App'x at 424-25; *see also Guzman v. Sec'y, Dep't of Corrs.* 663 F.3d 1336, 1349-50 (11th Cir. 2011) (state court's decision on petitioner's *Giglio* claim was an unreasonable application of clearly established federal law).

In view of this, one would think that the state here would have actually *responded* to this issue.   Alas, other than erroneously arguing procedural default (that these two grounds are "new claims"), doc. 37 at 6-7, it has not.   *See* docs. 7, 8, 37-1, 43 & 45-47.   Worse, this was, at bottom, French's core defense -- since he claimed he never touched victims who were testifying years after the fact, any impeaching evidence

obviously was critical.   And the prosecutor *himself* (not Merritt, who had presented only its bare bones, doc. 9-7 at 21-22),[31] amplified on it during a later colloquy in which the trial judge again disregarded *Spivey* and *Tyson*:

> [T]he indications that have been given to me is that [B.F.] went to visit . . . the defendant in Lawrenceville[, Georgia] and, while there, she was kept longer than she was supposed to be kept and that some authorities were called and, therefore, there's this false allegation of kidnapping.   Arguably, it's *true*.[32] But even if it is, it's something that cannot be used to impeach a victim in a child molestation case.
>
> MR. MERRITT: If she has made, as the testimony will be, a false allegation against this man, she is -- we are permitted --
>
> [PROSECUTOR]: That is absolutely not the law.

---

[31]    At the state habeas evidentiary hearing Merritt himself remarked that such evidence existed and was material: "[T]he trial judge did not allow all of the evidence I thought that *was available* on the prior allegation, the prior false allegation." Doc. 9-5 at 19 (emphasis added).   He never said how much evidence he had amassed and thus "was available," nor acknowledged the *French* court's ruling that he failed to perfect the record (presumably, make an evidentiary proffer, as he had done with French's penis photo).   In two recent capital cases the Eleventh Circuit ruled that defense counsel provided ineffective assistance (and thus, that the state courts ruled § 2254(d)-unreasonably on that IAC issue) by failing to conduct an adequate background investigation to evidentially support a mitigation defense.   *See, e.g., Cooper v. Sec'y, Dept. of Corrs.*, 646 F.3d 1328, 1351-52 (11th Cir. 2011); *Ferrell v. Hall*, 640 F.3d 1199, 1226-27 (11th Cir. 2011).   While the record here does not show to what efforts Merritt made to adduce this guilt-innocence phase evidence, the *prosecutor*, who presumably investigated the matter prior to trial in anticipation of this issue, was able to supply factual details and concede that the false accusation incident was arguably true.

[32]    French says B.F.'s mother was behind it: "The state's case [on the B.F. counts] hinged on the credibility of the alleged victim, the evidence wasn't so overwhelming and [the outcome would have been different] had the defense counsel been allowed to place the evidence of false allegation and the fact that it was the mother of the alleged victim who instigated and coached the false allegation prior to the allegations in this case." Doc. 15 at 25.

MR. MERRITT: Well --

THE COURT: Okay.

MR. MERRITT: -- the Court has the case.

THE COURT: I agree with [the prosecutor], so I will grant the motion in limine.

Doc. 9-7 at 23-24 (emphasis and footnote added).

French still faces plenty of obstacles here.   First, as noted above, it is his burden to plead *and prove* his entitlement to habeas relief.   That means *he* must produce the omitted, false-kidnapping-charge evidence or supply good cause why he cannot.[33]   Second, none of this goes toward challenging the A.S. count (Count 2) -- the other 50% of his conviction -- and he was sentenced concurrently on these counts.   Still, it cannot be denied that B.F. testified first, and believing B.F.'s testimony likely bled-over, persuasion wise, into the jury's choice to also believe A.S. -- the

---

[33]   Yet, French is in prison now, and his IAC claim goes to Merritt's failure to secure this evidence and get it into the record, thus depriving Merritt of his due process right to evidence, even to this date: In taking his liberty from him, and thus his ability to be free to seek this evidence outside of prison, was he not owed a duty by competent counsel to develop and record-perfect this evidence in the first place (i.e., the very same evidence that French -- because the state has locked him up -- cannot now realistically obtain)? As mentioned, Merritt would later concede that such evidence existed and was material: "[T]he trial judge did not allow all of the evidence I thought that *was available* on the prior allegation, the prior false allegation." Doc. 9-5 at 19 (emphasis added). Again, however, Merritt failed to acknowledge his own failure to secure that evidence and thus perfect the record.

jury would be fully entitled to believe, for example, that "if he could do that to his daughter, then maybe he also did it to her friend" -- thus supporting a prejudice showing.

The Court therefore **DIRECTS** the state to *fully* brief this claim, particularly on the issue whether an evidentiary hearing is warranted to adduce the evidence Merritt failed to proffer, and also show why the state habeas judge's ruling is not "§ 2254(d)-unreasonable."

French's Ground 14, IAC claim is premised on his contention that the trial judge was biased against him: (a) the judge sua sponte interrupted Merritt's opening argument; and (b) the judge cut short Merritt's presentation to the jury.   Doc. 15 at 27; *see also* doc. 9-2 at 21-22 (state habeas presentation); doc. 9-3 at 4 (state habeas ruling).   Merritt, French reminds, conceded at the state habeas evidentiary hearing that, at least in retrospect, moving for recusal and appealing its denial "might have been a benefit" to French.Doc. 15 at 28 (citing doc. 9-5 at 25; *see also id.* at 18).   French says Merritt was ineffective for failing to raise this claim at trial and thus on appeal.   Doc. 15 at 27.   The habeas judge employed the same conclusory reasoning to reject this claim.   Doc. 9-3 at 4-7.

This claim fails.   While bias claims like this are otherwise recognizable in federal habeas proceedings,[34] French faces three hurdles here: A presumption that his trial judge was not biased *plus* the IAC and § 2254(d) deference layers.   *See Sivak v. Hardison*, 658 F.3d 898, 924-27 (9th Cir. 2011) (death-sentenced § 2254 petitioner failed to show that he was deprived of due process because of sentencing judge's alleged bias toward him and his defense counsel, and thus, he was not entitled to habeas relief on that ground, where the state courts determined that the sentencing judge was impartial, and petitioner failed to identify any evidence of actual judicial bias).

True, the state habeas judge here employed that same flawed logic (citing Merritt's self-serving testimony and crediting it with no analysis, doc. 9-3 at 4-7).   Nevertheless this claim fails on the merits:

> [J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of

---

[34]   *See, e.g., Owen v. Sec'y for Dep't of Corrs.*, 568 F.3d 894, 922 (11th Cir. 2009); *Wellons v. Hall*, 554 F.3d 923, 936-37 (11th Cir. 2009) (noting, in capital case where jurors gave "chocolate genitalia gifts" to judge and bailiff, that Due Process requires that a criminal defendant receive a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case), *vacated and remanded*, 558 U.S. ___, 130 S. Ct. 727, 732 (2010); *remanding for evidentiary hearing on bias claim*, 603 F.3d 1236, 1237 (11th Cir. 2010).

favoritism or antagonism as to make fair judgment impossible. . . . Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration -- even a stern and short-tempered judge's efforts at courtroom administration-- remain immune.

*Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *compare Hook v. McDade*, 89 F.3d 350, 355-56 (7th Cir. 1996) (judge's rulings and comments that he found defendant's disqualification motion offensive, that it impugned his integrity, and that it was unprofessional for a lawyer to knowingly make false statement impugning integrity of judge did not demonstrate any extrajudicial personal prejudice against defendant, who was a lawyer, that would warrant judge's disqualification), *with United States v. Holland*, 655 F.2d 44, 47 (5th Cir. 1981) (judge's comments reflecting personal hostility toward defendant for successfully appealing prior conviction based on judge's actions required recusal).   This Court has reviewed the record and finds nothing approaching actual, *Liteky*-level bias.   So this claim fails no matter what deference standard is applied.

In Ground 18 French raises a *Crawford* claim based on Detective Kesner's testimony as to how B.F. came to find out about French's

molestation of A.S.   Doc. 16 at 11-15; *see Crawford v. Washington*, 541 U.S. 36, 68 (2004) (the Sixth Amendment prohibits the introduction of out-of-court testimonial statements unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant); *Cooper*, 426 F. App'x at 692.   Even if this

> court determines there has been a constitutional error, habeas relief may not be warranted if the error was "harmless." *Brecht v. Abrahamson*, 507 U.S. 619, 622–23, 113 S. Ct. 1710, 1713–14, 123 L.Ed.2d 353 (1993). We ask "whether the error had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 637, 113 S. Ct. at 1722. "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice." *Id.*

*Galiana v. Sec'y of Dep't of Corrs.*, 429 F. App'x 849, 849-50 (11th Cir. 2011) (no *Brecht*-level error from admission of lab technician's testimony where jury heard same evidence admitted through other witnesses whose testimony was not alleged to violate the Confrontation Clause).   Here no *Brecht*-level error can be shown because *Merritt himself* elicited from B.F. how she came to learn of A.S.'s ordeal, doc. 9-7 at 132-33, that benefitted French's defense strategy, and French does not fault Merritt on that score.   This claim, too, must be denied.

## III.   CONCLUSION

Respondent's Second Motion to Dismiss (doc. 45) is **DENIED**.   In light of that ruling, the Court **VACATES** its previous ruling (doc. 18, denying (as moot) French's motion to amend (doc. 5)) and now **GRANTS** the motion to amend.   Doc. 5.   It similarly **VACATES** the same ruling (doc. 18) to revive petitioner's Motion to Grant Relief Under Default (doc. 11) and "Motion to Strike" (doc. 12), but **DENIES** them (docs. 11 & 12) on the merits because they as frivolous.

Next, the Court **DENIES** as frivolous French's motion to strike (doc. 51), but **GRANTS** his motion (doc. 54) to "strike" doc. 53 (one of his briefs) and replace it with doc. 55 (another brief).   The Court also **DENIES** his "final order" and "summary judgment" motions.   Docs. 56 & 57.   Finally, within 21 days of the date this Order is served, the state shall further brief Grounds 12 & 13 discussed above.   French is free to respond as he wishes, but he should do so within 21 days after the state serves its response upon him.

**SO ORDERED** this __15th__ day of February, 2012.

_S. A. Smith_

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA